UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MADSEN,<br><br>    Plaintiff,<br><br>v.<br><br>DR. KIRAN TOOR,<br><br>    Defendant. | **1:19-cv-0022-AWI-JLT (PC)**<br><br>**FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Docs. 17, 35)<br><br>**14-DAY DEADLINE** |

Plaintiff Michael Madsen, a prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action against a governmental employee under 42 U.S.C. § 1983 for alleged constitutional violations. In his First Amended Complaint, Plaintiff asserts Eighth Amendment medical indifference claims against Defendant Dr. Kiran Toor for his failure to examine Plaintiff, provide adequate medical treatment his severe back impairments, and prescribe effective pain medication. (Doc. 12.) For the following reasons, the Court RECOMMENDS that Defendant's motions for summary judgment be **GRANTED**. (Docs. 17, 35.)

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

    **A. Plaintiff's Allegations**

Plaintiff suffers from stenosis and disc degeneration, which causes pain and limited mobility and is well-documented in Plaintiff's medical record. (*See* Doc. 22 at 20–29, 34–50.) Plaintiff arrived at Valley State Prison May 2018. He lists numerous dates between July 30, 2018,

through December 25, 2019, when Plaintiff was seen or requested to be seen by "medical personnel" for pain and worsening of his mobility impairment. (Doc. 12 at 3). Defendant was his primary care physician ("PCP") there, and Plaintiff had appointments with Defendant on December 5, 18, and 21, 2018. Plaintiff complains that Defendant demonstrated deliberate indifference to Plaintiff's medical needs by failing to prescribe pain medications aside from psychiatric medications and Motrin, which Plaintiff claims were ineffective to control his pain. A back brace and physical therapy were also ineffective.

On July 10, 2018, Plaintiff lodged with California Correction Health Care Services ("CCHCS") a health care grievance with tracking number VSP HC 18001076, in which Plaintiff stated: "I turned in a medical request to see my PCP. Left leg has gotten much worse . . ." (Doc. 12 at 13.) He spoke with the "screening nurse" who was viewing his MRI and said that "she wouldn't do nothing except prescribe Motrin." *Id.* He also alleges that "the interviewing nurse knew a serious medical need existed and refused to remedy it," and more generally, "VSP medical staff have continued to show medical indifference to a serious medical need." *Id.* at 14. He does not name or implicate Dr. Toor in his grievance, and he only mentions that he had turned in a medical request to see his PCP, not that the PCP had. *Id.* at 13.

By letter dated September 11, 2018, CCHCS provided Plaintiff with an institutional level response, which indicated no intervention would be taken. (Doc. 12 at 15–16.) The letter advised Plaintiff that he could submit his health care grievance package to headquarters' level review and "[t]he headquarters' level review constitutes the final disposition on your health care grievance and exhausts your administrative remedies." *Id.*

Plaintiff submitted his grievance for headquarters' level review. On December 17, 2018, CCHCS again indicated no intervention would be taken. *Id.* at 17–18. The letter advised that Plaintiff could file a civil action and that "[t]his decision exhausts your administrative remedies." (Doc. 12 at 18.)

**B. Procedural History**

On January 7, 2019, Plaintiff initiated this action by filing a civil rights complaint alleging cruel and unusual punishment (Claim I), deliberate indifference to his medical needs (Claim II),

and violation of the Americans with Disabilities Act and section 504 of the Rehabilitation Act. (Doc. 1.) Plaintiff submitted as evidence his grievance VSP HC 18001076 and the CCHCS's dispositions at both levels of review. Upon its initial screening of the complaint, the Court entered an order finding no cognizable claims:

> Plaintiff's first claim does not identify Dr. Toor as the individual who responded to plaintiff's health care requests. Similarly, plaintiff's third claim regarding work assignments does not appear to implicate Dr. Toor. Without any allegations of Dr. Toor's personal participation in these instances and without any allegations that Dr. Toor somehow directed the conduct of other individuals or failed to act upon knowing of any alleged violations, Plaintiff has not stated a claim against Dr. Toor as to these two claims.

(Doc. 11 at 4.) With respect to Plaintiff's Eighth Amendment medical indifference claim, the Court found as follows:

> Plaintiff has adequately alleged a serious medical condition. His factual allegations, however, do not suggest deliberate indifference by Dr. Toor. Rather, these allegations and the attachments to the complaint suggest only that plaintiff disagrees with the treatment Dr. Toor has provided. This disagreement is insufficient to impose liability. Accordingly, this claim must be dismissed.

*Id.* at 6. The Court granted Plaintiff leave to amend his complaint. *Id.* 6–7.

On May 28, 2019, Plaintiff filed his first amended complaint. (Doc. 12.)

On January 16, 2020, Defendant filed a motion to dismiss Plaintiff's first amended complaint for failure to state a claim and failure to exhaust available administrative remedies. (Doc. 17.) Plaintiff filed a response, to which Defendant filed a reply. (Docs. 22, 23.) The Court issued Findings and Recommendations to grant Defendant's motion to dismiss for failure to exhaust administrative remedies. (Doc. 24.) Plaintiff filed objections to the Findings and Recommendations, which prompted the Court to withdraw its Findings and Recommendations:

> [F]or the first time, Plaintiff suggests that he filed a second grievance naming Dr. Toor that was screened out pursuant to California Code of Regulations, title 15, § 3999.227(a), because it was deemed duplicative of his earlier-filed grievance. (See Doc. 27 at 3.) Plaintiff does not submit a copy of this second grievance, and the Court hesitates to consider this argument for the first time at this late stage. Nonetheless, in the interest of justice, the Court will convert Defendant's motion to dismiss into a motion for summary judgment and provide the parties an opportunity to submit additional briefing and evidence.

3

| | |
|---|---|
| 1 | (Doc. 29 at 1–2.) |
| 2 | On December 18, 2020, Defendant filed its Motion for Summary Judgment for Failure to |
| 3 | Exhaust, supported by the declaration of K. Martin, a staff services manager for the Health Care |
| 4 | Correspondence and Appeals Branch of CCHCS. (Doc. 35.) Plaintiff filed a response (Doc. 38), |
| 5 | and Defendant filed a reply. (*See* Doc. 39.) |

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party may accomplish this by presenting evidence that negates an essential element of the non-moving party's case. *Id.* Alternatively, the movant can demonstrate that the non-moving party cannot produce evidence to support an essential element of his claim that must be proven at trial. *Id.*; Fed. R. Civ. P. 56(c)(1)(B). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

If the moving party meets this initial showing, the burden shifts to the non-moving party to establish "specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The non-moving party cannot simply rely on the pleadings and conclusory allegations in an affidavit. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when deciding a motion for summary judgment, the court must view any inferences drawn from the underlying facts in a light most favorable to the non-moving party. *Id.*

The Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules

strictly." *Soto*, 882 F.3d at 872 (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)). While prisoners are relieved from strict compliance, they still must "identify or submit some competent evidence" to support their claims. *Soto*, 882 F.3d at 872. Plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment if based on personal knowledge and specific facts admissible in evidence. *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).

**B. Eighth Amendment Medical Indifference**

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "It is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Id.* at 842.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories,* 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06).

### C. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory, and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). The exhaustion requirement applies to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or offered by the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The PLRA requires "proper exhaustion," which means that "the prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88, 93. The rules that must be followed, in other words, "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system . . . , but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* The exhaustion requirement allows prison officials to have an opportunity to resolve disputes before the filing of a court action against them. *Jones*, 549 U.S. at 204.

The failure to exhaust administrative remedies is an affirmative defense that the defendant must plead and prove. *Id.* at 204, 216. The defendant bears the burden of producing evidence that proves a failure to exhaust; summary judgment is appropriate only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). On a motion for summary judgment, the defendant bears the initial burden of proving (1) the existence of an available administrative remedy, and (2) the plaintiff failed to exhaust that remedy. *Id.* at 1172. If the

6

1 defendant makes this showing, the burden shifts to the prisoner to present evidence showing
2 "that there is something in his particular case that made the existing and generally available
3 administrative remedies effectively unavailable to him." *Id.* (citation omitted). A prisoner may
4 not file a complaint raising non-exhausted claims. *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th
5 Cir. 2010).

6     The ultimate burden of proof, however, remains with the defendant. *Albino*, 747 F.3d at
7 1172. "If a motion for summary judgment is denied, disputed factual questions relevant to
8 exhaustion should be decided by the judge." *Id.* at 1170. If the court finds that remedies were not
9 available, the prisoner exhausted available remedies, or the failure to exhaust available remedies
10 should be excused, the case proceeds to the merits. *Id.* at 1131.

### D. Health Care Grievance Process

The California Department of Corrections and Rehabilitation employs an administrative process for health care grievances for "applied health care policies, decisions, actions, conditions or omissions that have a material adverse effect on [a prisoner's] health or welfare" Cal. Code Regs. tit. 15 § 3999.226(a) (2018). To initiate a health care grievance, a prisoner submits CDCR Form 602 HC within thirty calendar days and must "clearly and coherently" include "all information known and available to him or her regarding the issue." *Id.* at § 3999.227(b), (g). Moreover, "[t]he grievant shall include any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement." *Id.* § 3999.227(g)(1). Health care grievances are screened to identify whether they should be rejected and to ascertain whether they should be addressed as a health care staff complaint. *Id.* at §§ 39999.228, 3999.231(b). Health care grievances are subject to two levels of review: (1) an institutional level of review, and (2) a headquarters' level of review, which exhausts administrative remedies. *Id.* at § 3999.226(a)(1), (g). Rejection or withdrawal of a healthcare grievance does not exhaust administrative remedies. *Id.* at § 3999.226(g).

///
///
///

## III. DISCUSSION

### A. Exhaustion of Remedies

The parties do not dispute that Plaintiff has a serious medical condition related to his back, which causes pain and mobility limitations. The parties also do not dispute that CDCR maintains a health care grievance review process that provides an administrative remedy for prisoners. The evidence establishes that Plaintiff understood and utilized the grievance review process. Therefore, Defendant has met his initial burden to show the existence of an available administrative remedy.

Plaintiff submitted numerous health care grievances, but this lawsuit concerns only one health care grievance, VSP HC 18001076, as it is the only grievance attached to Plaintiff's First Amended Complaint. In the interest of justice, the Court allowed the parties to submit additional briefing and evidence, given his mention of a second grievance that specifically named Dr. Toor as the subject of the grievance. Despite this opportunity, Plaintiff did not submit evidence that he submitted or exhausted a second grievance. Instead, Plaintiff submitted redundant arguments and medical records directed to the merits of his Eighth Amendment claims of medical indifference and cruel and unusual punishment.

Plaintiff attempts to link his grievances in VSP HC 18001076 to Defendant—even though he is not specifically named—by emphasizing Defendant's role as Plaintiff's PCP and his knowledge of Plaintiff's pain and mobility problems. Plaintiff contends that Defendant was "solely responsible for my medical care and decisions within." (Doc. 22 at 4.) At the same time, he admits to filing this lawsuit prematurely:

> This administrative appeal was originally initiated prior to Defendant Kiran Toors being assigned as my PCP. Yet upon finalizing my exhaustion of administrative grievance remedies my level of care per Defendant Dr. Kiran Toor was so sub-standard I initiated this civil suit. Plus he was my treating physician who was providing that care.

(Doc. 22 at 30.) Plaintiff also stated: "At this point I could of [sic] submitted a grievance specifically naming Defendant Dr. Toor as now my new P.C.P. yet with the same allegations being grieved . . . You cannot file a second grievance on issues which are presently being grieved

and have not been exhausted." (Doc. 38 at 7.) Because Plaintiff's VSP HC 18001076 grievance predates Defendant's care, the Defendant could not have been the subject of the grievance or serve as the basis for this lawsuit.

Upon review of VSP HC 18001076, the Court finds the allegations too generalized to give Dr. Toor notice that this grievance was directed at him, notwithstanding his later assignment as Plaintiff's PCP. California regulations require prisoners to "document clearly and coherently all information known and available to him or her regarding the issue" in the grievance. Cal. Code Regs. tit. 15, § 3999.227(g). In addition, "[t]he grievant shall include any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement." *Id.* § 3999.227(g)(1). Plaintiff alleges in the grievance that a "screening nurse" made comments demonstrating indifference; an "interviewing nurse knew of a serious medical need existed and refused to remedy it"; and "VSP medical staff have continued to show medical indifference to a serious medical need." (Doc. 12 at 13–14.) However, without any allegations of Defendant's personal participation and only a general reference to "medical staff," it is too vague to support claims against Defendant. To the extent that Plaintiff contends Defendant had oversight over others treating Plaintiff, the events alleged in the grievance predate such authority by the Defendant.[1] Under these circumstances, the Court finds that the VSP HC 18001076 grievance was exhausted, but it did not exhaust his claims against Defendant asserted in this lawsuit.

Defendant has met its burden to show that Plaintiff failed to exhaust the health care administrative remedy available to him. *Albino*, 747 F.3d at 1172. Upon the shifting of burdens, Plaintiff has not presented evidence showing "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citation omitted). Accordingly, summary judgment for failure to exhaust administrative remedies should be entered in favor of the Defendant.

///

---

[1] Moreover, the mere fact that a person supervises one who inflicts constitutional injury is insufficient to impose liability un 42 USC § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (U.S.,2009).

**B. Discovery**

Plaintiff argues that discovery would allow him to establish Defendant's inadequate treatment and deliberate indifference to Plaintiff's medical needs. The information sought by Plaintiff relates to the merits of Plaintiff's claim rather than facts concerning exhaustion, which are established in the parties' submissions on summary judgment. General discovery has not yet opened, and no *Albino* hearing is necessary. Plaintiff's request for pretrial discovery is therefore **DENIED**.

**IV. CONCLUSION**

Defendant has demonstrated that there are no genuine issues of material fact related to exhaustion of administrative remedies, and he is entitled to judgment as a matter of law on the issue of Plaintiff's failure to exhaust those remedies. For the foregoing reasons, the Court **RECOMMENDS** that Defendant's motions for summary judgment be **GRANTED**. (Docs. 17, 35.)

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)**. Within 14 days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 7, 2021**     **/s/ Jennifer L. Thurston**
CHIEF UNITED STATES MAGISTRATE JUDGE